**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JOHN DAVID KENNEMER, #2197180, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:20-CV-00080-RAS- |
| v. | § | CAN |
| | § | |
| DENTON COUNTY, ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Denton County, Texas's Second Motion to Dismiss Plaintiff's First Amended Complaint [Dkt. 73]. After reviewing the Motion to Dismiss, and all other relevant filings, the Court recommends the Motion to Dismiss be **GRANTED** and Plaintiff's claims against Denton County, and any remaining unserved defendants, be **DISMISSED WITH PREJUDICE** as set forth herein.

**INTRODUCTION**

On February 3, 2020, *pro se* Plaintiff John David Kennemer ("Plaintiff") initiated the instant lawsuit pursuant to 42 U.S.C. § 1983 against Denton County [Dkt. 1].[1] Plaintiff's claims arise from his transfer into the custody of the Texas Department of Criminal Justice ("TDCJ") on May 31, 2018, specifically his transfer from the Parker County Jail to the Denton County Jail on this date, to await TDCJ transport.[2]

---

[1] This matter, originally assigned to United States District Judge Amos L. Mazzant, III, was transferred on April 7, 2021, to United States District Judge Richard A. Schell [Dkt. 26], the undersigned having been referred this matter for pretrial proceedings under both District Judges [Dkt. 3].

[2] The Denton County Jail serves as the central hub for the Texas Department of Criminal Justice-Institutional Division to take custody of out-of-county prisoners [*See* Dkt. 38 at 2].

*Relevant Procedural History*

At the time of filing this suit, Plaintiff was an inmate of the TDCJ; it is believed Plaintiff is no longer incarcerated.[3]  On February 24, 2020, the Court granted Plaintiff's motion to proceed *in forma pauperis* [Dkt. 7].  On March 8, 2021, having received the initial partial filing fee as required by the Prison Litigation Reform Act ("PLRA"), the Court ordered the Clerk of Court to issue service of process and for the United States Marshals to complete service [Dkt. 24].  On May 6, 2021, summons was returned as executed as to Defendant Denton County ("Denton County") [Dkt. 27].

On May 26, 2021, Plaintiff filed his First Amended Complaint – the live pleading – adding as parties (in addition to Denton County) Defendants LaSalle Southwest Corrections, correctly named Southwestern Correctional, LLC, James Robinson, and John Does #1-4 [Dkt. 35 at 5-6].  John Doe #3 is identified as a Southwestern Correctional, LLC transport officer, and John Does #1, #2, and #4 are identified as Denton County Jail officers (collectively, the "Denton County John Does").[4]  On September 22, 2022, the Court granted the motion to dismiss filed on behalf of the Southwestern Correctional Defendants, and Plaintiff's claims against Southwestern Correctional, LLC, Robinson, and John Doe #3 were dismissed with prejudice [Dkt. 80].  *Kennemer v. Denton Cnty.*, No. 4:20-CV-80, 2022 WL 4449320 (E.D. Tex. Sept. 22, 2022).  Only Denton County and John Does #1, #2, and #4 (together, the "Denton County Defendants") remain before the Court.

---

[3] On September 17, 2021, Plaintiff filed a notice of address and "status change" advising the Court he "is no longer a prisoner at East Texas Treatment Center" [Dkt. 50].  Another defendant, Southwest Correctional LLC avers Plaintiff has been released from custody [Dkt. 56 at 20]; Plaintiff has not controverted this claim.

[4] Using the Eastern District of Texas Prisoner's Civil Rights Complaint form, Plaintiff names the following defendants, and the John Does are identified as follows: defendant #1 – Denton County; defendant #2 – La Salle Southwest Corrections; defendant #3 – James Robinson, transport officer for La Salle Southwest Correction; defendant #4 – John Doe #1, desk officer at Denton County Jail on May 31, 2018; defendant #5 – John Doe #4, control room officer at Denton County Jail on May 31, 2018; defendant #6 – John Doe #2, "Denton County Sheriff (a man of Latino desent [sic], 5'9'', 300 lbs, wore glasses); defendant #7 – John Doe #3, La Salle Corrections transport officer ("I believe he was rank of sgt. [and] 6'4'', 270 pounds") [Dkt. 35 at 5-6].

***Plaintiff's Live Pleading – First Amended Complaint***

The general facts of this litigation have already been once recounted by this Court [Dkt. 69 at 3-5]. Briefly, Plaintiff pleads he originally broke his right heel on March 10, 2018, injuring his right ankle joint [Dkt. 35 at 8], which was diagnosed by a specialist on March 27, 2018. He alleges a "[p]ermanent disability became the result of continuing injury to the bones" in his right foot [Dkt. 35 at 8]. Plaintiff was transported from Parker County in the van operated by Southwestern Correctional, LLC to Denton County Jail on May 31, 2018 [Dkt. 35 at 8-9]. Upon arrival, Plaintiff was told that Denton County did not have any wheelchairs, and he was ordered to "walk on his injured ankle" [Dkt. 35 at 9]. Plaintiff alleges he "re-fractured his foot while at Denton County Jail," which denied him medical care after re-injuring his foot [Dkt. 35 at 9]. Plaintiff states that on June 18, 2018, "the diagnosis was affirmed by UTMB Dr. O'Conor of the TDCJ Gurney Unit" which was further "affirmed on December 19, 2019, by "UTMB Dr. Felicia Onemu of the Ramsey Unit of TDCJ," and again on April 20, 2021 by "UTMB Dr. Helt of the East Texas Treatment Center" [Dkt. 35 at 11]. Notably, "Plaintiff and Defendant agree that Plaintiff both arrived and again departed" the Denton County Jail on May 31, 2018, "less than a full day for the purpose of effectuating a transfer of facility [Dkt. 69 at 5].

Stemming from these events, Plaintiff asserts claims against the Denton County Defendants, specifically that they have violated his Eighth Amendment rights and discriminated against him in violation of the Americans with Disability Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") [Dkt. 35 at 9-13]. As to his § 1983 claim for violation of the Eighth Amendment, Plaintiff specifically alleges he was denied medical care for the injury to his foot, denied a call over the radio to report his need for medical treatment, and denied a wheelchair or crutches as an accommodation while at the Denton County Jail [Dkt. 35 at 9-10]. Plaintiff alleges

that these acts were each committed by John Doe #1, a Denton County desk officer on May 31, John Doe #4, a Denton County control room officer on May 31, and John Doe #2, working in the "change out/strip search" area on May 31 (identified as a Denton County Sheriff) [Dkt. 35 at 5-6, 9-10]. Plaintiff alleges he continues to experience extreme pain daily because of his injury at the Denton County Jail [Dkt. 35 at 15]. Plaintiff sues the Denton County John Does in their official and individual capacities [Dkt. 35 at 17-19]. He further argues Denton County is liable for his § 1983 claims under a theory of *Monell* liability because it "is the policy, practice, or custom of the Denton County Jail to deny emergency medical care of prisoners," as shown by the John Doe Defendants when they "each separately, un-prejudiced by the words of the co-defendant, denied [Plaintiff] medical care at three different stages of the 'book in' process" [Dkt. 35 at 21]. Plaintiff seeks a declaratory judgment, damages, and any other relief to which he is entitled [Dkt. 35 at 7].

Related to his ADA and RA claims, he alleges the Denton County Jail should have been able to provide him a wheelchair or crutches upon arrival, and that "the policy/practice of Denton County Jail denied the plaintiff an accommodation he needed for the activity of walking/standing" and "by its policy/practice denied me to accommodation of a wheelchair or crutches[,] it denied me the activity of walking/rolling into the jail" [Dkt. 35 at 11-12]. Plaintiff claims the Denton County John Doe Defendants denied him "the program, service, or activity of medical services that other inmates were not excluded from," which is "discrimination based on [ ] Plaintiff's disability" [Dkt. 35 at 12]. Plaintiff urges this discrimination was not an "isolated incident" because multiple defendants separately denied him use of a wheelchair, which "occurred at different times in the day, and in different locations in the Denton County Jail" [Dkt. 35 at 22].

*Motion to Dismiss – Denton County Defendants*

On March 23, 2022, Denton County filed its Second Motion to Dismiss [Dkt. 73].[5] Plaintiff did not file any response, notwithstanding the Court's orders directing Plaintiff to file a response [Dkts. 75; 77].[6]  Denton County urges dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) on numerous grounds, including insufficiency of the pleadings for failure to plead deliberate indifference, lack of municipal liability, unavailability of the requested relief, and because the Denton County John Doe Defendants have never been served.[7] [8]

---

[5] On June 15, 2021, Denton County filed its first motion to dismiss urging failure to exhaust under the PLRA [Dkt. 38]. The Court denied the motion on the grounds that failure to exhaust is an affirmative defense [Dkt. 76], finding Plaintiff sufficiently alleged the grievance process was "unavailable" to him, a narrow exception to the PLRA's requirement that a prisoner fully exhaust his administrative remedies before filing suit.  *Kennemer v. Denton Cnty.*, No. 4:20-CV-00080-RAS-CAN, 2022 WL 912101, at *9 (E.D. Tex. Feb. 21, 2022), *report and recommendation adopted*, No. 4:20-CV-80, 2022 WL 905735 (E.D. Tex. Mar. 27, 2022).  The Court directed Denton County to either move for summary judgment as to exhaustion or to re-file its motion to dismiss on its other Rule 12(b)(6) grounds.  *Id.* at *9.  Denton County opted to abandon its exhaustion defense and instead filed the instant Motion to Dismiss.

[6] Because Plaintiff has not filed a response, the Court will presume Plaintiff does not controvert the facts set out by Denton County and has no evidence to offer in opposition pursuant to Eastern District of Texas Local Rule CV-7(d).

[7] Defendants John Doe #1, John Doe #2, and John Doe #4 have not been served in this matter.  Pursuant to the Court's Show Cause Order, summons were issued as to Denton County, but no summons were ever issued for any John Doe Defendant [*See docket generally*].  Notwithstanding, even had these Defendants been identified and properly served, Plaintiff's claims would be subject to dismissal for the reasons argued by Denton County's Motion to Dismiss. Additionally, the John Doe Defendants were not named in the original complaint, and any claims against them are barred by limitations.  This Court previously found that Plaintiff's claims accrued on the date of his injury, and he "therefore had two years, until Monday, June 1, 2020" to timely file claims arising out of this incident.  *See Kennemer v. Denton Cnty.*, No. 4:20-CV-00080-RAS-CAN, 2022 WL 4459881, at *11 (E.D. Tex. Aug. 24, 2022), *report and recommendation adopted*, No. 4:20-CV-80, 2022 WL 4449320 (E.D. Tex. Sept. 22, 2022).  Plaintiff did not add the John Does until the amended complaint filed on May 26, 2021; any claims against the Denton County John Does are thus time barred.  *See id.* at *11-12.  The Fifth Circuit recognizes that when one defending party establishes the plaintiff has no cause of action, this defense inures to the benefit of similarly situated defendants.  *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (holding that where "a defending party establishes that plaintiff has no cause of action ... this defense generally inures also to the benefit of a defaulting defendant.").  "The policy rationale for this rule is that it would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants."  *Baggiolini v. Ocwen Fin. Corp.*, No. 4:19-CV-00156-ALM-CAN, 2019 WL 8331423, at *8 (E.D. Tex. Dec. 12, 2019), *report and recommendation adopted*, No. 4:19-CV-156, 2020 WL 813044 (E.D. Tex. Feb. 19, 2020).

[8] Because Plaintiff brings this suit against Denton County, any claims against the Denton County John Does in their official capacity must be dismissed as duplicative.  *See Shelton v. Murphree*, No. 4:20-CV-453-RAS-KPJ, 2022 WL 18491910, at *5 n.1 (E.D. Tex. Dec. 23, 2022) ("When a plaintiff brings suit against a government official in their official capacity, the plaintiff in effect brings suit against the entity the official represents"), *report and recommendation adopted*, No. 4:20-CV-453-RAS-KPJ, 2023 WL 425388 (E.D. Tex. Jan. 25, 2023).

## LEGAL STANDARDS

### Section 1915A and 1915(e) Screening[9]

Although Denton County has filed a Motion to Dismiss, Plaintiff's live pleading is also subject to screening and possible *sua sponte* dismissal under 28 U.S.C. § 1915. A court may dismiss a civil rights complaint under § 1915A and § 1915(e) "at any time if it fails to state a claim on which relief can be granted." *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (citing 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1)). "Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief." *Prescott v. Johnson*, No. 6:18CV577, 2022 WL 672694, at *3 (E.D. Tex. Mar. 7, 2022) (citing *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009)).[10] Both sections require the Court to dismiss for failure to state a claim, and the standard applied is the same as for a Rule 12(b)(6) dismissal. *See Roberts v. Johnson*, No. 4:19-CV-00114-ALM-CAN, 2019 WL 6534924, at *4 (E.D. Tex. Oct. 28, 2019), *report and recommendation adopted*, No. 4:19-CV-114, 2019 WL 6527892 (E.D. Tex. Dec. 4, 2019).[11]

---

[9] Plaintiff was a prisoner at the time he filed his complaint, thus his claims remain subject to screening under § 1915A. *See Smith v. Tom Green Cnty. Jail*, No. 6:17-CV-0055-BL, 2018 WL 3873665, at *7 (N.D. Tex. Aug. 15, 2018) (citing *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998)). Plaintiff is also proceeding *in forma pauperis*, and his claims are further subject to screening under § 1915(e).

[10] "A complaint is frivolous if it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Harris v. Bigs*, 381 F. App'x 363, 364 (5th Cir. 2010) (per curiam) (quoting *Martin*, 156 F.3d at 580); *see Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Cheek v. United States*, No. 4:19-CV-737-O, 2020 WL 6162045, at *3 (N.D. Tex. Oct. 21, 2020) (citing *Neitzke*, 490 U.S. at 327).

[11] As previously noted, Plaintiff has filed over a half-dozen lawsuits during his incarceration, each of which has previously been dismissed, and none of Plaintiff's appeals have been successful. *See Kennemer v. UTMB Med.*, No. 6:21-CV-266, 2021 WL 5834429, (E.D. Tex. Sept. 23, 2021), *report and recommendation adopted*, No. 6:21-CV-266-JDK-KNM, 2021 WL 5826683 (E.D. Tex. Dec. 8, 2021) (dismissing claims against the warden of the East Texas Treatment Facility of the TDCJ); *Kennemer v. Parker Cnty.*, No. 4:20-CV-056-P, 2023 WL 2143603, at *4 (N.D. Tex. Feb. 21, 2023); *Kennemer v. Pittman*, No. 3:20-cv-00123 (S.D. Tex. Feb. 5, 2021), *aff'd*, No. 21-40120 (5th Cir. June 24, 2022); *Kennemer v. Alford*, No. 3:20-cv-00078 (S.D. Tex. Nov. 16, 2021); *Kennemer v. Davis*, No. 3:20-cv-00260 (S.D. Tex. Nov. 16, 2021); *Kennemer v. Danzy*, No. 3:20-cv-00030 (S.D. Tex. Nov. 16, 2021); *Kennemer v.*

*Federal Rule of Civil Procedure 12(b)(6)*

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. FED. R. CIV. P. 12(b)(6). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[12] "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555. Although a *pro se* plaintiff's pleadings must be read more liberally than those filed by an attorney, the complaint must nonetheless allege sufficient facts to demonstrate to the court that the plaintiff has at least a colorable claim. *See Bustos v. Martini Club, Inc*., 599 F.3d 458, 465-66 (5th Cir. 2010).

## ANALYSIS

*Failure to State a Section 1983 Claim – Inadequate Medical Care*

Denton County argues for dismissal of Plaintiff's Section 1983 claims, based on his allegedly inadequate medical care while in the custody of Denton County in violation of the Eighth Amendment, for failure to state a claim.[13] Section 1983 provides a vehicle for redressing the

---

*Collier*, No. 3:19-cv-00335 (S.D. Tex. Apr. 28, 2022), *appeal dismissed*, No. 21-40508 (5th Cir. July 28, 2021). The Court properly takes judicial notice of Plaintiff's prior proceedings, as "[t]he proceedings at issue are capable of accurate and ready determination by reference to the record of the case available for public viewing in the Court's CM/ECF or PACER docketing system, and the public record of filings in those cases cannot reasonably be challenged." *See Flores v. U.S. Att'y Gen.*, No. 1:14-CV-198, 2015 WL 1088782, at *3 (E.D. Tex. Mar. 4, 2015).

[12] To assess the sufficiency of a complaint, the Court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

[13] The instant cause is at least the second federal case Plaintiff has filed alleging claims arising out of this transfer, including a similar 1983 suit in the Northern District of Texas related to the refracture of his foot. *Kennemer v. Parker Cnty.*, No. 4:20-CV-056-P, 2021 WL 1192249 (N.D. Tex. Mar. 30, 2021), *aff'd*, No. 21-10467, 2022 WL 2610239

violation of federal law by those acting under color of state law.  However, Section 1983 is not a general tort remedy available to all who have suffered an injury at the hands of the state or its officers.  *Waddleton v. Rodriguez*, 750 F. App'x 248, 252 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2617 (2019).  To prove a cause of action under § 1983, a plaintiff must show that they have "been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."  *Id.*  To succeed under § 1983 based on episodic acts or omissions,[14] a plaintiff must show:  (1) that a government official acted or failed to act with subjective deliberate indifference to the constitutional rights of the plaintiff; and (2) the predicate act or omission resulted from a government custom or policy that was adopted or maintained with objective deliberate indifference to the plaintiff's constitutional rights.  *Estate of Hooker-Murray v. Dallas Cnty.*, No. 3:07-CV-0867-P, 2008 WL 11424337, at \*4 (N.D. Tex. Dec. 19, 2008) (citing *Scott v Moore*, 114 F.3d 51, 54 (5th Cir. 1997)), *aff'd*, 332 F. App'x 991 (5th Cir. 2009).

"In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs."  *Domino v. Tex. Dep't of*

---

(5th Cir. July 8, 2022).  Notably, the court there extensively considered the sufficiency of Plaintiff's allegations as to municipal liability, finding Plaintiff failed to plead the *Monell* elements with particularity.  *Id.* at \*8 ("Although Kennemer writes of the alleged failure of both Parker and Jack Counties," the court determined "he never recites a particular policy, practice, or custom of any of these entities implemented by a policy maker that caused him to sustain injury.").  The court also extensively considered whether Plaintiff pleaded sufficient allegations to state a deliberate indifference claim, concluding that he had not.  *Id.* at \*10 (collecting cases) ("Although Kennemer at times alleges that these officers were 'deliberately indifference,' or showed 'recless indifference to harm,' his factual allegations do not show that any of these officers said anything to him, or took any actions, that shows they both 'knew of and disregarded an excessive risk in inmate health of safety.'").  Although Denton County's Motion focuses its arguments largely on *Monell* liability, with relatively less focus on deliberate indifference, given the similarities between these two cases and in light of the Court's authority under § 1915 to dismiss meritless claims, the undersigned includes a substantive discussion both of the deliberate indifference standard and *Monell* liability.

[14] "An officer's failure to provide a detainee with immediate medical treatment is considered an episodic act or omission."  *McCarty v. Dougherty*, No. 9:17-CV-182, 2021 WL 956225, at \*3 (E.D. Tex. Feb. 2, 2021) (citing *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)), *report and recommendation adopted*, No. 9:17-CV-182, 2021 WL 949465 (E.D. Tex. Mar. 12, 2021), *appeal dismissed*, No. 21-40222, 2021 WL 4301357 (5th Cir. Apr. 22, 2021).

*Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).[15]  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *see Pinchback v. Leon-Gomez*, No. 6:15-CV-805-RWS-KNM, 2017 WL 5632444, at *4 (E.D. Tex. Mar. 7, 2017), *report and recommendation adopted*, No. 6:15-CV-00805-RWS-KNM, 2017 WL 5634636 (E.D. Tex. Mar. 22, 2017).

"Deliberate indifference 'is an extremely high standard to meet' and requires satisfaction of both an objective and a subjective component."  *Grizzle v. McIntire*, No. 5:22-CV-017-BQ, 2022 WL 17818101, at *9 (N.D. Tex. Oct. 31, 2022) (citation omitted) (citing *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013)).  "An inmate must first prove objective exposure to a substantial risk of serious bodily harm."  *Id.* (citing *Gobert*, 463 F.3d at 345).  "As to the subjective component, an official acts with deliberate indifference only where he (1) 'knows [the] inmate[ ] face[s] a substantial risk of serious harm' and (2) 'disregards that risk by failing to take reasonable measures to abate it.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "In the context of claims based on denial of adequate medical care, demonstrating deliberate indifference requires evidence that prison officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Rogers v. Hierholzer*, 857 F. App'x 831, 833 (quoting

---

[15] The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees.  *Hurdsman v. Pokluda*, No. A-17-CV-290-RP, 2020 WL 156598, at *10 (W.D. Tex. Jan. 13, 2020) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)).  Evaluation of claims under the Eighth Amendment and the Fourteenth Amendment are substantially similar.  *See Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019).  The Court's analysis thus properly proceeds under a deliberate indifference analysis because Plaintiff was a convicted prisoner even though he was not yet in TDCJ custody at the time of the incidents alleged.  *Cf. Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 645, 647) ("When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate.").

*Gobert*, 463 F.3d at 346).  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."  *Gobert*, 463 F.3d at 346.  To reiterate, "[d]eliberate indifference is an extremely high standard to meet;" deliberate indifference exists wholly independent of an optimal standard of care, requiring "a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice."  *Bone v. Skinner*, No. 4:21-CV-00201-RAS-CAN, 2022 WL 912100, at *5 (E.D. Tex. Feb. 24, 2022) (quoting *Rogers*, 857 F. App'x at 833), *report and recommendation adopted*, No. 4:21-CV-201, 2022 WL 906191 (E.D. Tex. Mar. 27, 2022).

Denton County broadly argues Plaintiff has failed to allege deliberate indifference [Dkt. 73 at 9-10].  The Court agrees.  Here, there is no indication the Denton County Defendants' actions rose to the level of deliberate indifference to Plaintiff's medical needs.  Plaintiff, at most, alleges Defendants "failed to act reasonably in loading, transporting, and unloading him at the many different instances transport was required" and that a subsequent delay in medical care occurred. *Kennemer v. Parker Cnty.*, 2021 WL 1192249, at *10 (citing *Oliva v. Rupert*, 555 F. App'x 287, 288 (5th Cir. 2012) (affirming the district court's dismissal under 28 U.S.C. § 1915A(b)(1) of Eighth Amendment claims that transporting officers were responsible for inmate's fall while exiting van, and stating "Oliva's allegations against the two transporting officers state, at most, claims for negligence and [are] therefore not valid § 1983 claims") (citing *Daniels*, 474 U.S. at 332-36)).  "Kennemer's allegations [if any] against [Defendants] involv[ing] loading and transporting him in vans, fail to state claims of the violation of a constitutional right."  *Id*. Similarly, "a delay in delivering medical care creates constitutional liability only where the alleged

deliberate indifference results in substantial harm." *Grizzle*, 2022 WL 17818101, at \*10 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)); *see Rogers*, 709 F.3d at 410.

Moreover, "[w]hen analyzing claims for individual liability for deliberate indifference, the Court must examine each defendant in turn." *Ambriz v. Fed. Corr. Inst. - Big Spring*, No. 1:18-CV-00201-BU, 2021 WL 5168647, at \*6 (N.D. Tex. Oct. 6, 2021) (citing *Lawson v. Dall. Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (instructing that in applying the *Farmer* test, "each individual's subjective deliberate indifference must be examined separately."); *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)) ("We of course examine each defendant's actions individually."). As for John Doe #4, who was working in the "control room" of the Denton County Jail, Plaintiff alleges only that Doe #4 "saw the Plaintiff re-fracture his [right] ankle upon entering the jail" and "was the first employee of Denton County Jail that failed to call for medical attention" [Dkt. 35 at 9]. No allegations can be found that Doe #4 was deliberately indifferent to Plaintiff's medical condition or need for medical care. *See Rhine v. City of Mansfield*, 499 F. App'x 334, 335 (5th Cir. 2012) ("Although she alleged that she requested medical attention for her shoulder, right side, and wrist from defendants, she did not allege what she actually told defendants about the nature or extent of her injuries. Therefore, her allegations did not indicate whether defendants were aware that she faced a substantial risk of serious harm and disregarded that risk."). As for John Doe #1, the desk officer at the time of Plaintiff's intake into the Denton County Jail, Plaintiff alleges that he was "hopping" when he came into contact with Doe #1, and that when Plaintiff asked "to see medical," Doe #1 "just nodded his head" [Dkt. 35 at 9]. He claims "no words were said" out of "concern" for Plaintiff's injury [Dkt. 35 at 9]. This amounts to an allegation that Plaintiff disagrees with the decision regarding whether or not to provide him immediate medical attention, which is not enough

to show deliberate indifference. *See Baughman*, 935 F.3d at 309-10 ("Baughman's allegations demonstrate Jane Doe was cognizant of his medical condition and treatment. Her purported orders for Baughman to leave the medical unit simply indicate a decision he did not need further medical attention. The agreement to this course of action by Nurse Madiko, who the complaint alleges accompanied and observed Baughman from his cell to the medical area, is similar. Baughman, in effect, disputes the nurses' decision on the medical attention he should have received, which is insufficient to state a claim."). As for John Doe #2, Plaintiff alleges this officer was working the "change out/strip search" area, and that Doe #2 "could see [that] my entire right foot was a deep purple, all over, and he could see my right foot was 3 times bigger than my left foot" [Dkt. 35 at 10]. Doe #2 "could clearly see [Plaintiff's] injured right foot" but "failed to provide" Plaintiff "with emergency medical care" when he allegedly "refused to call over his radio for medical assistance" [Dkt. 35 at 10]. Like each other John Doe, the pleadings at most allege Doe #2's actions resulted in a delay in receiving medical treatment. But Plaintiff does not plead that he requested medical care from Doe #2 or any other fact that would permit the Court to infer Doe #2 knowingly denied Plaintiff medical care. *See Thompson v. Campos*, No. 5:16-CV-018-C, 2016 WL 9449793, at *4 (N.D. Tex. July 13, 2016) ("Examining the allegations and evidence against each defendant separately, as required, there is no evidence that either Campos, Perez, Coleman, Caughran, or Creager at any time possessed actual subjective knowledge of Thompson's medical condition or that any of them did anything to consciously disregard his condition."). Important here and relevant to Plaintiff's allegations against each of the Denton County Defendants, Plaintiff was only at the Denton County Jail for one day awaiting transport, and Plaintiff has not alleged any facts that suggest the Denton County Defendants knew of any "substantial risk" of serious harm from delayed treatment while awaiting transfer. *See Grizzle*, 2022 WL 17818101, at *13

(quoting *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009)) ("Grizzle was awaiting transport to the Montford Unit, and he fails to plead sufficient facts demonstrating that his injuries were so obviously serious that they required immediate attention prior to transfer. In other words, his allegations do not establish that Defendant Guerra was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and that he actually '[drew] the inference.'").  Because Plaintiff admits he eventually received care when transferred to the custody of TDCJ, his claim is, at most, one for delayed medical care; Plaintiff's general invocation of the phrase "deliberate indifference" fails to allege any distinct substantial risk of harm resulting *from the delay itself.  See id.* at *14 (citing *Atkins v. Sheriffs Jail Avoyelles Par.*, 278 F. App'x 438, 439 (5th Cir. 2008) (per curiam)) ("Grizzle received medical attention two days later. Thus, Grizzle's claim against Defendant Guerra, at best, constitutes one for delayed care, and he does not plead any facts showing he suffered substantial harm due to the brief delay."); *Cudjo v. Hammond*, No. 6:15CV1162, 2018 WL 2709442, at *7 (E.D. Tex. Apr. 26, 2018) (collecting cases) ("Ordinarily, short delays in receiving pain medication, absent a distinct serious medical need, do not give rise to a substantial risk of serious medical harm."), *report and recommendation adopted*, No. CV 6:15CV1162, 2018 WL 2684488 (E.D. Tex. June 4, 2018); *see also Havens v. Tallahatchie Cnty. Sheriff's Dep't*, No. 3:19CV225-RP, 2021 WL 5044989, at *8 (N.D. Miss. Oct. 29, 2021) ("In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation.").[16]

---

[16] To be sure, Plaintiff's amended complaint contains detailed allegations regarding the injury – the re-fracturing of his foot – but that is not sufficient to allege a substantial harm resulting from delayed medical care. *See Cudjo*, 2018 WL 2709442, at *8 (citation omitted) ("While Plaintiff alleges that he suffered from migraine headaches, this does not rise to the level of substantial harm. He has made no claim of any lasting complications resulting from the delay in receiving his medication. In any event, Plaintiff has not alleged that the delay resulted in substantial harm. Based on the facts as presented by Plaintiff, he has failed to state a claim for delayed medical treatment.").

In sum, Plaintiff was ultimately seen by a medical provider, and he does not plead allegations that any Denton County Defendant refused to treat Plaintiff, wholly ignored his complaints, intentionally mistreated him, or engaged in wanton disregard for a serious medical need.[17]  Plaintiff's allegations, construed in the light most favorable to him, allege either medical negligence or a delay in treatment that did not rise to a substantial risk—neither of which state a viable Section 1983 claim for medical indifference.  *See Rhine v. Ellison*, 537 F. App'x 410, 411 (5th Cir. 2013) ("The delays [the plaintiff] experienced in receiving medical treatment do not state a constitutional violation because she did not allege facts from which it could be inferred that Dr. Schmidt knew the delays would result in substantial harm or that the delays in fact resulted in substantial harm."); *Nixon v. Neal*, No. CV 20-2934, 2021 WL 2688950, at *12 (E.D. La. June 7, 2021) ("Given the substantial and ongoing medical care reflected in Plaintiff's medical records, his dissatisfaction with the timeliness, quality or effectiveness of medical care does not support a finding of deliberate indifference to his serious medical needs as necessary to establish a constitutional violation cognizable under § 1983"), *report and recommendation adopted*, No. CV 20-2934, 2021 WL 2680163 (E.D. La. June 30, 2021).

### *Failure to State a Municipal Liability Claim – Denton County*

In *Monell*, the Supreme Court held that municipalities and other local government entities are included among those persons to whom § 1983 applies.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  "Municipal liability requires proof of three elements: '(1) an official policy (or custom), of which (2) a policymaker can be

---

[17] As noted *supra*, in the Northern District, the court dismissed Plaintiff's medical indifference claims against the County Defendants for failure to state a claim, for similar reasons considered here: "At most, Kennemer's allegations against these transport officers might support a claim that they were negligent. Allegations of negligence are not sufficient to maintain an action under 42 U.S.C. § 1983."  *See Kennemer v. Parker Cnty.*, 2021 WL 1192249, at *10. The Fifth Circuit affirmed this finding on appeal.  *Kennemer v. Parker Cnty.*, No. 21-10467, 2022 WL 2610239, at *2 (5th Cir. July 8, 2022) ("Kennemer failed to adequately plead subjective deliberate indifference.").

charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" *Kent v. Collin Cnty.*, No. 4:21-CV-412-SDJ, 2022 WL 949963, at *5 (E.D. Tex. Mar. 29, 2022) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010)).  "Without an underlying constitutional violation, a municipal-liability claim fails." *Id.* (citing *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013)).

Denton County urges none of these elements are adequately alleged by Plaintiff [Dkt. 73 at 5-9].[18]  Plaintiff did not respond to the instant Motion.  While the amended complaint addresses Denton County's liability and the *Monell* standard, the allegations are nothing more than pleading bare labels of the elements.  *See Roe v. Johnson Cnty.*, No. 3:18-CV-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex. July 29, 2019) (quoting *Lowe v. Dallas Police Dep't*, No. 3:17-cv-704-G-BN, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017)) ("Asserting claims in this manner [of shotgun pleading] – that is, 'by merely attaching a label and/or legal conclusion to no facts unique to that claim or, at best, threadbare unique facts – is not sufficient to state a claim that is plausible on its face.'"), *report and recommendation adopted*, No. 3:18-CV-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019).  The thin factual allegations related to the Denton County Jail entirely refer to the conduct of the John Doe Defendants and the allegations related to failure to provide Plaintiff medical care [Dkt. 35 at 21-22].  Each allegation is related to the specific allegations that give rise to his medical indifference claim.  Plaintiff has not stated a medial indifference claim,

---

[18] Denton County's Motion thoroughly addresses the "official custom or policy" and "policymaker" elements of a municipal liability claim, explaining the pleading deficiencies as to deliberate indifference and Plaintiff's allegations regarding the medical care received.  The Court has considered and finds these points well-taken and need not rehash the grounds for dismissal that Plaintiff has conceded through his non-response to the Motion.  In the Parker County case, the court there reached a similar conclusion that the pleadings were insufficiently specific to allege any facts related to an official policy of the county.  *Kennemer v. Parker Cnty.*, 2021 WL 1192249, at *8 ("Kennemer's allegations do not implicate any official policy and he does not articulate facts that would support inadequate policy based claims against Parker County").  The Fifth Circuit also affirmed this finding.  *Kennemer v. Parker Cnty.*, 2022 WL 2610239, at *1 (affirming the district court's conclusion that "Kennemer failed to properly allege municipal liability as required by *Monell*" because his pleadings did not recite any policy, practice, or custom of the county).

and therefore he has not shown liability of Denton County because "without a predicate constitutional violation, there can be no *Monell* liability." *See Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022); *see also Kent*, 2022 WL 949963, at *5. For this additional reason, any claim against Denton County must dismissed. *See Benson v. Galveston Cnty.*, No. 3:21-CV-200, 2022 WL 17847242, at *7 (S.D. Tex. Nov. 29, 2022) ("Foundational to the success of any municipal-liability claim under § 1983 is the existence of a violation. Because the court has already determined that there was no constitutional violation in Deputy Benavidez's conduct toward Benson . . . there can likewise be no claim for *Monell* liability here. Because the lack of a violation disposes of Benson's municipal-liability claim, the court does not reach the remaining *Monell* elements.").

### *Failure to State an ADA or Rehabilitation Act Claim*[19]

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Where the ADA prohibits discrimination by public entities, including private employers, '[t]he [Rehabilitation Act] prohibits discrimination in federally-funded programs and activities." *Back v. Texas Dep't of Crim. Just. Institutional Div.*, 684 F. App'x 356, 358 (5th Cir. 2017) (quoting *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).[20] "The RA and the ADA are

---

[19] ADA and RA claims have two-year statutes of limitations; because they were first pleaded in the amended complaint, they are barred by limitations. When considering Southwest Correctional, LLC's motion to dismiss, the Court previously determined that Plaintiff's ADA and RA claims are time barred and should be dismissed. *See Kennemer v. Denton Cnty.*, 2022 WL 4459881, at *11 (noting that ADA and RA claims have the same two-year statute of limitations as Section 1983 claims, they were not pleaded in this cause until nearly one year after limitations had run, and they do not relate back to the original complaint for the purpose of Rule 15). Moreover, *sua sponte* dismissal is authorized when "it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (citation omitted).

[20] Under the ADA, a "public entity" is defined as: (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad

judged under the same legal standards, and the same remedies are available under both Acts."
*Kemp*, 610 F.3d at 234. "[B]ecause the legal standards applying to Title II of the ADA also apply"
to RA claims, "a plaintiff raises a viable claim under either by alleging that (1) he has a qualifying
disability; (2) he is being denied the benefits of services, programs, or activities for which the
public entity is responsible, or is otherwise discriminated against by the public entity; and (3) he
is being discriminated against by reason of his disability." *Back*, 684 F. App'x at 358 (quoting
*Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011)). However, "the ADA is not violated by 'a prison's
simply failing to attend to the medical needs of disabled prisoners.'" *Prescott v. Johnson*, No.
6:18CV577, 2022 WL 672694, at *8 (E.D. Tex. Mar. 7, 2022) (quoting *Nottingham v. Richardson*,
499 F. App'x 368, 368 (5th Cir. 2012)).

Denton County argues Plaintiff's pleadings do not suffice as to the first or third element
[Dkt. 73 at 10-12]. More specifically, as to the first element, Denton County argues that an injury
"such as a broken leg or foot" does not constitute a disability under the ADA, and that diagnosis
of such injury is not the same as establishing a disability within the meaning of the ADA [Dkt. 73
at 11]. As to the third element, Denton County argues Plaintiff fails to state an ADA or RA claim
when the allegations are "no more than a restatement of a Section 1983 denial of medical care
claim" because he has not alleged that he was discriminated against *because of* any disability
[Dkt. 73 at 11-12].[21] Review of the pleadings confirms Plaintiff's ADA and RA claims are
essentially repackaged medical indifference claims. The basis of his claim is that the fracturing of
his foot was a physical impairment, and he complains that the Denton County Jail "should have

---

Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49). 42 U.S.C.
§ 12131(1). Section 504 of the Rehabilitation Act applies only to federal agencies and entities receiving federal
financial assistance. *Taylor v. City of Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015).
[21] Any claim against the John Doe Defendants should be dismissed as duplicative with Plaintiff's ADA and RA claim
against Denton County. *See Grizzle*, 2022 WL 17818101, at *30 (citing *Moss v. Harris Cnty. Constable Precinct
One*, 851 F.3d 413, 420 n.5 (5th Cir. 2017)) (collecting cases) ("An ADA suit against a state official in his or her
official capacity is not a suit against the official but rather a claim against the official's office.").

been able to provide a wheelchair, or crutches to [Plaintiff] upon arrival" [Dkt. 35 at 11].  He cites the diagnosis of his fractures by TDCJ medical staff as the basis for his impairment.  But "it is well-settled that a temporary injury, such as a broken foot, is not considered a 'disability' under the ADA."  *See Street v. Maverick Tube Corp.*, No. 4:15-CV-02736, 2016 WL 8711338, at *6 (S.D. Tex. June 17, 2016) (collecting cases) (citing *Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 448 (S.D. Tex. 2010)), *report and recommendation adopted*, No. 4:15-CV-2736, 2016 WL 3948106 (S.D. Tex. July 19, 2016).  Further, Plaintiff's allegations fail to state a claim because "[t]he ADA does not cover the mere absence or inadequacy of medical treatment for a prisoner."  *See Prescott*, 2022 WL 672694, at *8; *Roberts v. Cooper*, No. 6:22CV102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022) (dismissing prisoner's ADA claim where the "Plaintiff generally complains that he has been subjected to the denial of medical care on the basis of his disability"), *report and recommendation adopted*, No. 6:22-CV-00102, 2022 WL 2440776 (E.D. Tex. July 5, 2022).  Plaintiff's allegation that he was not provided assistance during transport when he was injured is not enough to allege discrimination because of a disability arising under the ADA or RA, and these claims should be dismissed.  *See Kennemer v. Parker Cnty.*, No. 4:20-CV-056-P, 2023 WL 2143603, at *3 (N.D. Tex. Feb. 21, 2023) (dismissing the county upon "find[ing] that Kennemer has failed to allege: (1) plausible facts to support the elements of a prima facie violation of the ADA; (2) plausible facts to support a finding of discriminatory intent to deny him service because of a disability; and (3) an actual disability as defined under the ADA."); *Miller v. Chapman*, No. CIV.A. 13-00367-SDD, 2014 WL 2949287, at *3 (M.D. La. June 30, 2014) (footnote omitted) ("Plaintiff argues that 'LSP has a responsibility under the law to provide a handicapped equipped van to transport handicapped inmates safely.' This allegation alone is insufficient to support a claim of discrimination based on Plaintiff's disability arising under the

ADA and the RA."); *see also Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246 (5th Cir. 2021) (affirming dismissal of ADA and RA claim because the plaintiff "fails to satisfy the causation element of her claim—that she was denied benefits of non-emergency chronic medical care because of her epilepsy."); *Nottingham*, 499 F. App'x at 377 (affirming dismissal of allegations that the plaintiff was "not given safe transit as a disabled person," finding the claim "does not establish discrimination based on disability").

***Punitive Damage Claims Should Be Dismissed***

Denton County additionally urges that, to the extent Plaintiff seeks punitive damages, they are not available for claims against the County under Section 1983, the ADA, or the Rehabilitation Act [Dkt. 73 at 12-13].   The Court agrees.  Punitive damages should be dismissed where Plaintiff has not alleged any Defendants has acted with evil intent or reckless indifference in relation to any of his Section 1983 claims.  *See, e.g.*, *McKnight v. MTC*, No. 3:15-CV-1647-K-BK, 2015 WL 7730995, at *2 (N.D. Tex. Nov. 9, 2015) (dismissing request for punitive damages for lack of factual allegations that the defendant's conduct was "motivated by evil intent" or demonstrated "reckless or callous indifference" to the plaintiff's constitutional rights), *report and recommendation adopted*, No. 3:15-CV-01647-K, 2015 WL 7735910 (N.D. Tex. Nov. 30, 2015).  Punitive damages are also unavailable for Plaintiff's claims under the ADA and RA.  *See, e.g.*, *Grizzle*, 2022 WL 17818101, at *31 (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("to the extent Grizzle seeks punitive damages for his ADA/RA claims, he cannot obtain relief.").

***Plaintiff's Transfer Moots Request for Declaratory Relief***

Denton County finally argues the declaratory relief Plaintiff requests is now moot because he has been transferred out of the Denton County Jail [Dkt. 73 at 13].  The Fifth Circuit and district courts in Texas have repeatedly held that transfer to another prison renders moot any claim for

declaratory or injunctive relief sought related to penitentiary-specific remedies. *See, e.g.*, *Kennemer v. Parker Cnty.*, 2021 WL 1192249, at *10 (collecting cases) ("As [plaintiff] is no longer housed in either of these county jails, however, his claims for injunctive or declaratory relief are moot."). This Court also previously found "Plaintiff's release from TDCJ custody moots his claim for declaratory relief," when it granted Southwestern Correctional, LLC's motion to dismiss. *Kennemer v. Denton Cnty.*, No. 4:20-CV-00080-RAS-CAN, 2022 WL 4459881, at *13 (E.D. Tex. Aug. 24, 2022) (collecting cases), *report and recommendation adopted*, No. 4:20-CV-80, 2022 WL 4449320 (E.D. Tex. Sept. 22, 2022). For the same reasons, Plaintiff's declaratory relief against Denton County is also moot.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned recommends that Defendant Denton County, Texas's Second Motion to Dismiss Plaintiff's First Amended Complaint [Dkt. 73] be **GRANTED**, and further that Plaintiff's claims against each of the Denton County Defendants, which are the only claims remaining in this cause, be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district

court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 1st day of March, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE